Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7142 | **DATE** | 2/26/2002 |
| **CASE TITLE** | MENARD, INC. vs. U.S. EQUITIES DEVELOPMENT, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held and continued to March 12, 2002 at 9:00 a.m. Jury trial set for June 17, 2002 is vacated. Enter Memorandum Opinion And Order. Defendant U.S. Equities' motion to dismiss counts I, II, III, IV, V and XVI is granted in part and denied in part. Jacobson's motion to dismiss counts X and XVIII is granted. CGL's motion to strike and dismiss counts XI and XIX is granted. SKS's motion to dismiss counts XIII, XIV, XV and XX is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | FEB 2 8 2002 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | 42 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | | | | date mailed notice | |
| LG | courtroom deputy's initials | | | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MENARD, INC., d/b/a MENARDS, ) <br> ) <br> ) Case No. 01 C 7142 <br> Plaintiff, ) <br> ) Hon. John W. Darrah <br> v. ) <br> ) <br> U.S. EQUITIES DEVELOPMENT, INC.,) <br> d/b/a B-BROOK EQUITIES, LLC; and ) <br> COUNTRYSIDE INDUSTRIES, INC.; ) <br> DAVID L. JACOBSON & ASSOCIATES,) <br> LTD.; COWHEY GUDMUNDSON ) <br> LEDGER, LTD.; and SERVICE ) <br> KONSTRUCTION SUPPLY, INC. ) <br> ) <br> ) <br> Defendants. ) <br> ) | |

FEB 2 8 2007

## MEMORANDUM OPINION AND ORDER

Plaintiff, Menard, Inc., doing business as Menards ("Menards"), originally filed this action in the Circuit Court of Will County against Defendants, U.S. Equities Development, Inc. ("U.S. Equities"); Countryside Industries, Inc.; David L. Jacobson and Associates, Ltd. ("Jacobson"); Cowhey Gudmundson Ledger, Ltd. ("CGL"); and Service Konstruction Supply, Inc. ("SKS"). The action was subsequently removed to this Court.

U.S. Equities, Jacobson, CGL and SKS have moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), certain counts of the complaint against them. For the reasons that follow, U.S. Equities' Motion to Dismiss Counts I, II, III, IV, V and XVI is granted in part and denied in part. Jacobson's Motion to Dismiss Counts X and XVIII is granted. CGL's Motion to Strike and

-1-

Dismiss Counts XI and XIX is granted. SKS's Motion to Dismiss Counts XIII, XIV, XV and XX is granted.

## LEGAL STANDARD

When considering a motion to dismiss, well-pleaded allegations in the complaint are accepted as true. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997). Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998). Dismissal is proper only when it appears beyond doubt that plaintiff can prove no set of facts to support the allegations in his or her claim. *Strasburger v. Board of Education*, 143 F.3d 351, 359 (7th Cir. 1998).

"Although the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail the facts upon which he bases his claim'" [citation omitted], he must "set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery.'" *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985). A complaint will not avoid dismissal if it contains "bare legal conclusions" absent facts outlining the basis of the claims. *Perkins v. Silverstein*, 939 F.2d 463, 467 (7th Cir. 1991).

## BACKGROUND

Plaintiff, Menards, has filed a twenty-count complaint against Defendants, U.S. Equities, Jacobson, CGL, SKS and Countryside Industries. The complaint alleges the following claims against U.S. Equities: breach of contract (Count I), breach of express warranty (Count II), breach of implied warranty (Count III), violation of the Consumer Fraud and Deceptive Practices Act (Count IV), negligent misrepresentation (Count V), and negligence (Count XVI). The complaint alleges the following claims against Jacobson: breach of contract (Count X) and negligence (Count XVIII). The

complaint alleges the following claims against CGL: breach of contract (Counts XI, XII) and negligence (Count XIX). The complaint alleges the following claims against SKS: breach of contract (Count XIII), breach of implied warranty (Count XIV), negligent misrepresentation (Count XV), and negligence (Count XX). For purposes of these Motions to Dismiss, the following allegations are taken as true.

Menards, a Wisconsin corporation, entered into a contract with U.S. Equities, an Illinois corporation doing business as B-Brook Equities, LLC ("B-Brook"), in which B-Brook agreed to sell and Menards agreed to buy a parcel of land consisting of approximately 14.16 acres located adjacent to the intersection of Illinois Route 53 and Rockhurst Road in Bolingbrook, Illinois ("the premises").

Pursuant to the terms of the contract, B-Brook agreed to construct a retaining wall on the east side of the premises. B-Brook entered into contracts with Jacobson, an Illinois civil and structural engineering consulting firm, and CGL, an Illinois civil engineering firm, in which Jacobson agreed to design the retaining wall and CGL agreed to engineer the site plan to be used in the development of the premises and placement of the retaining wall. B-Brook contracted with SKS, a construction supply firm, to provide the retaining wall bricks or blocks and other retaining wall material used on the premises. Jacobson, CGL and SKS knew, at the time of contracting, that the retaining wall was being built for Menards.

B-Brook failed to build the retaining wall: (1) according to Jacobson's and CGL's plans, specifications and drawings; (2) in a good, substantial, and workmanlike manner; (3) to the satisfaction of Jacobson and CGL; and (4) with the capacity to support a typical Menards retail operation.

Jacobson failed to prepare the proper plans, specifications and drawings necessary to

-3-

construct the retaining wall and to ensure that the retaining wall was built to its satisfaction.

CGL failed to: (1) prepare the proper plans, specifications and drawings necessary to improve the premises and place the retaining wall and improve the premises for the development of a typical Menards retail outlet; (2) supervise or direct the improvement of the premises and the placement of the retaining wall; (3) ensure that the retaining wall was built to its satisfaction; (4) provide professional engineering services for the development of a typical Menards retail outlet for the site in question.

SKS supplied defective block material and failed to supply proper block material for a retaining wall capable of supporting a typical Menards retail operation.

The Village of Bolingbrook declared the retaining wall a public health violation. Some of the defects in the retaining wall include the following: (1) improper soil installed as backfill, (2) improper level of backfill, (3) improper maximum uniform surcharge of 250 pounds per square foot, (4) improperly constructed wall angle, (5) improperly installed geogrids, (6) improperly compacted backfill, and (7) defective block material.

Due to these defects and B-Brook's failures in building the retaining wall, Menards had to reconstruct the retaining wall at a cost of $2,500,000 and sustained loss of profits, delays in opening the store, additional security costs, and loss of goodwill and reputation.

## DISCUSSION

U.S. Equities argues that Counts I, II, III, and IV should be dismissed because no contract between it and Menards exists, and it is not doing business as B-Brook. U.S. Equities argues that Exhibits A through E to the complaint undermine Menards' conclusory allegation that it was one of the contracting parties and the B-Brook referred to in the complaint.

-4-

Pursuant to Federal Rule of Civil Procedure 10(c), which provides that "[a] copy of any written instrument which is attached as an exhibit to a pleading is a part thereof for all purposes," the exhibits are part of Plaintiff's complaint. "When . . . an exhibit contradicts an assertion in the complaint and reveals information which prohibits recovery as a matter of law, the information provided in the exhibit trumps the assertion in the complaint." *Banco del Estado v. Navistar Int'l Transp. Corp.*, 947 F. Supp. 1176, 1179 (N.D. Ill. 1996).

The exhibits to the complaint do not contradict Menards' allegation that U.S. Equities is the B-Brook referred to in the complaint. Exhibit E is a Purchase and Sale Agreement. The Purchase and Sale Agreement describes the seller as B-Brook and the purchaser as Menards. Robert A. Wislow signed the Purchase and Sale Agreement for B-Brook. The Purchase and Sale Agreement is notarized, and the Acknowledgment states:

> On this 11 day of August, 1999, before me a Notary Public within and for said County and State, personally appeared Robert A. Wislow to me personally known, who, being by me duly sworn did say that he is the Chairman and President of U.S. Equities Development, Inc., Manager of B-Brook Equities, LLC.

Furthermore, all of the exhibits to the complaint indicate that U.S. Equities and B-Brook are located at the same business address – 20 N. Michigan Avenue, Suite 200, Chicago, Illinois 60602. The exhibits reasonably support the inference that U.S. Equities is the B-Brook referred to in the complaint. Thus, dismissal of Counts I, II, III, and IV on this ground is not appropriate.

U.S. Equities, Jacobson, CGL and SKS all move to dismiss the tort claims against them, arguing that such claims are barred by the economic loss doctrine, which provides that claims cannot be maintained for damages to the product itself or the costs of repairs without a claim of personal injury or property damage.

The economic loss doctrine "bars a plaintiff from recovering in negligence for losses which are purely economic, that is, do not involve personal injury or property damage." *Tolan & Son, Inc. v. KLLM Architects, Inc.*, 308 Ill. App. 3d 18, 24 (1999) (quoting *Nepomoceno v. Knights of Columbus*, No. 96 C 4789, 1999 WL 66570 at *11 (N.D. Ill. Feb. 8, 1999)). "'Economic loss' has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits – without any claim of personal injury or damage to other property' . . . as well as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 82 (1982) (internal citation omitted).

There are three exceptions to the economic loss doctrine: "(1) where the plaintiff sustained damage, *i.e., personal injury or property damage*, resulting from a sudden or dangerous occurrence . . . ; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud . . . ; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *In re Chicago Flood Litig.*, 176 Ill. 2d 179, 199 (1997) (internal citations omitted).

Count V alleges that U.S. Equities negligently misrepresented that the retaining wall had been properly constructed. Count XV alleges that SKS negligently misrepresented that the block material used in constructing the retaining wall was of good quality and sufficient for use in building the retaining wall.

To state a claim for negligent misrepresentation, a plaintiff must plead:

(1) a false statement of material fact, (2) carelessness or negligence in ascertaining

> the truth of the statement by the defendant, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, (5) damage to the other party resulting from such reliance, and (6) a duty owed by defendant to plaintiff to communicate accurate information.

*Quinn v. McGraw-Hill Co., Inc.*, 168 F.3d 331, 335 (7th Cir. 1999) (citing *Rosenstein v. Standard & Poor's Corp.*, 264 Ill. App. 3d 818, 821 (1993)).

"[P]urely economic injury attributable to a negligent misrepresentation is not actionable in Illinois unless the defendant is in the 'business of supplying information for the guidance of others in their business transactions'." *Decatur Mem'l Hosp. v. Connecticut Gen. Life Ins. Co.*, 990 F.2d 925, 928 (7th Cir. 1993) (quoting *Moorman*, 91 Ill. 2d at 89). To state a claim based on the negligent misrepresentation exception to *Moorman*, Menards must allege that (1) SKS and U.S. Equities are in the business of supplying information for the guidance of others in their business dealings, (2) SKS and U.S. Equities provided information that constitutes a misrepresentation, and (3) SKS and U.S. Equities supplied the information for guidance in Menards' business dealings. *Tolan & Son, Inc. v. KLLM Architects, Inc.*, 308 Ill. App. 3d 18, 27 (1999).

The determination of whether a defendant is in the business of supplying information for the guidance of others in their business transactions is a "precise, case-specific inquiry." *Rankow v. First Chicago Corp.*, 870 F.2d 356, 361 (7th Cir. 1989). "If the intended end result of the plaintiff-defendant relationship is for the defendant to create a product, a tangible thing, then the defendant will not fit into the 'business of supplying information' negligent misrepresentation exception." *Tolan & Son*, 308 Ill. App. 3d at 28 (quoting *MW Mfrs., Inc. v. Friedman Corp.*, No. 97 C 8319, 1998 WL 417501, at * 4 (N.D. Ill. July 21, 1998)). A defendant is not in the business of supplying information if the information supplied "is merely ancillary to the sale of a product or service or in

connection with the sale." *Tolan & Son*, 308 Ill. App. 3d at 28.

Count V alleges that "B-Brook was acting in its trade of business as general contractor and real estate broker when it represented to Menards that the retaining wall had been properly constructed." (Compl. ¶ 44.) Count V also alleges that, as a result of U.S. Equities' alleged negligent misrepresentation, Menards incurred $2,500,000 in damages, the cost of reconstructing the retaining wall, and incidental and consequential damages, such as loss of profits, delays in opening the store, and loss of goodwill and reputation. (Compl. ¶¶ 49, 50.)

Real estate brokers are in the business of supplying information. *See Rankow*, 870 F.2d at 364. In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). The allegation that U.S. Equities was acting as a real estate broker reasonably supports the inference that U.S. Equities was in the business of supplying information.

Moreover, the allegations that U.S. Equities failed to inform Menards of defects in the retaining wall, had a duty to use reasonable care in supplying such information, and that such information was incorrect reasonably support the inference that the information U.S. Equities supplied constituted a misrepresentation and that it was provided for Menards' guidance. Therefore, Count V sufficiently states a claim for negligent misrepresentation, and dismissal of Count V is inappropriate. *Tolan & Son*, 308 Ill. App. 3d at 27.

SKS argues that Count XV should be dismissed because it does not allege that SKS is in the business of supplying information for the guidance of others.

Count XV alleges that SKS "negligently misrepresented that the block material to be used

-8-

in the retaining wall was of good quality and sufficient for use in the retaining wall . . . by failing to inform Menards of the defects with the block material to be used in the retaining wall." (Compl. ¶ 143.) Count XV also alleges that SKS was "acting in its trade of business as a subcontractor" when it made its alleged negligent misrepresentation. (Compl. ¶ 144.) The complaint also alleges that SKS is a construction supply firm. (Compl. ¶ 6.) Count XV alleges SKS's alleged negligent misrepresentation resulted in damages of $2,500,000, and incidental and consequential damages, including loss of profits, delays in opening the store, and loss of goodwill and reputation. (Compl. ¶¶ 149, 150.)

These allegations do not reasonably support the inference that SKS is in the business of supplying information. The purpose of any alleged relationship between Menards and SKS was for SKS to supply block material, a tangible thing. Any information allegedly supplied by SKS was "merely ancillary to the sale of a product or service or in connection with the sale." *Tolan & Son*, 308 Ill. App. 3d at 28. Thus, SKS is not in the "business of supplying information". Therefore, the negligent misrepresentation exception to the economic loss doctrine does not apply, and Count XV is dismissed.

Counts XVI, XVIII, XIX, and XX allege negligence claims against U.S. Equities, Jacobson, CGL, and SKS, respectively. U.S. Equities, Jacobson, CGL, and SKS argue that these Counts are barred by the economic loss doctrine and should be dismissed.

"A complaint which alleges a sudden and calamitous occurrence caused by a defect in a product, which results in a personal injury or damage to property other than the defective product, states a cause of action in tort." *United Air Lines, Inc. v. CEI Indus. of Ill., Inc.*, 148 Ill. App. 3d 332, 336 (1986); *see also In re Chicago Flood Litig.*, 176 Ill. 2d at 199-200 (holding that a sudden,

in the retaining wall was of good quality and sufficient for use in the retaining wall . . . by failing to inform Menards of the defects with the block material to be used in the retaining wall." (Compl. ¶ 143.) Count XV also alleges that SKS was "acting in its trade of business as a subcontractor" when it made its alleged negligent misrepresentation. (Compl. ¶ 144.) The complaint also alleges that SKS is a construction supply firm. (Compl. ¶ 6.) Count XV alleges SKS's alleged negligent misrepresentation resulted in damages of $2,500,000, and incidental and consequential damages, including loss of profits, delays in opening the store, and loss of goodwill and reputation. (Compl. ¶¶ 149, 150.)

These allegations do not reasonably support the inference that SKS is in the business of supplying information. The purpose of any alleged relationship between Menards and SKS was for SKS to supply block material, a tangible thing. Any information allegedly supplied by SKS was "merely ancillary to the sale of a product or service or in connection with the sale." *Tolan & Son*, 308 Ill. App. 3d at 28. Thus, SKS is not in the "business of supplying information". Therefore, the negligent misrepresentation exception to the economic loss doctrine does not apply, and Count XV is dismissed.

Counts XVI, XVIII, XIX, and XX allege negligence claims against U.S. Equities, Jacobson, CGL, and SKS, respectively. U.S. Equities, Jacobson, CGL, and SKS argue that these Counts are barred by the economic loss doctrine and should be dismissed.

"A complaint which alleges a sudden and calamitous occurrence caused by a defect in a product, which results in a personal injury or damage to property other than the defective product, states a cause of action in tort." *United Air Lines, Inc. v. CEI Indus. of Ill., Inc.*, 148 Ill. App. 3d 332, 336 (1986); *see also In re Chicago Flood Litig.*, 176 Ill. 2d at 199-200 (holding that a sudden,

in the retaining wall was of good quality and sufficient for use in the retaining wall . . . by failing to inform Menards of the defects with the block material to be used in the retaining wall." (Compl. ¶ 143.) Count XV also alleges that SKS was "acting in its trade of business as a subcontractor" when it made its alleged negligent misrepresentation. (Compl. ¶ 144.) The complaint also alleges that SKS is a construction supply firm. (Compl. ¶ 6.) Count XV alleges SKS's alleged negligent misrepresentation resulted in damages of $2,500,000, and incidental and consequential damages, including loss of profits, delays in opening the store, and loss of goodwill and reputation. (Compl. ¶¶ 149, 150.)

These allegations do not reasonably support the inference that SKS is in the business of supplying information. The purpose of any alleged relationship between Menards and SKS was for SKS to supply block material, a tangible thing. Any information allegedly supplied by SKS was "merely ancillary to the sale of a product or service or in connection with the sale." *Tolan & Son*, 308 Ill. App. 3d at 28. Thus, SKS is not in the "business of supplying information". Therefore, the negligent misrepresentation exception to the economic loss doctrine does not apply, and Count XV is dismissed.

Counts XVI, XVIII, XIX, and XX allege negligence claims against U.S. Equities, Jacobson, CGL, and SKS, respectively. U.S. Equities, Jacobson, CGL, and SKS argue that these Counts are barred by the economic loss doctrine and should be dismissed.

"A complaint which alleges a sudden and calamitous occurrence caused by a defect in a product, which results in a personal injury or damage to property other than the defective product, states a cause of action in tort." *United Air Lines, Inc. v. CEI Indus. of Ill., Inc.*, 148 Ill. App. 3d 332, 336 (1986); *see also In re Chicago Flood Litig.*, 176 Ill. 2d at 199-200 (holding that a sudden,

dangerous, or calamitous event must be coupled with personal injury or property damage).

Counts XVI, XVIII, XIX, and XX allege that the Village of Bolingbrook declared the retaining wall to be a public health violation. (Compl. ¶¶ 155, 164, 174, 184, 192.) Counts XVI, XVIII, XIX, and XX also allege that "as a public health violation, the wall creates a reasonable expectation of injury or death." (Compl. ¶¶ 155, 164, 174, 184, 192.) However, while the allegedly defective retaining wall allegedly creates a reasonable expectation of injury or death, Menards does not allege any injuries or death as a result of the retaining wall. Counts XVI, XVIII, XIX, and XX allege solely economic damages: the cost of repairs; loss of profits, goodwill, and reputation; and delays in opening the store. Counts XVI, XVIII, XIX, and XX do not allege any personal injury or damage to property other than the retaining wall.[1] Therefore, Counts XVI, XVIII, XIX, and XX are dismissed.

Counts X, XI, and XIII allege breach of contract claims against Jacobson, CGL, and SKS, respectively. Count XIV alleges a claim for breach of implied warranty against SKS. Jacobson, CGL, and SKS argue that Counts X, XI, XIII, and XIV should be dismissed because Menards was not a third-party beneficiary of their contracts with U.S. Equities.

Menards does not allege that it entered into any contracts with Jacobson, CGL, or SKS.[2]

"[O]nly when parties intentionally enter into a contract for the direct benefit of a third person may that person, who is not a party to the contract, enforce any rights therein." *Wheeling Trust &*

---

[1] Menards argues that the alleged defective retaining wall caused damage to surrounding property. (Resp. Def. Cowhey Gudmundson Leder, Ltd.'s Mot. Dismiss at 6.) However, these claims are not in the complaint and are raised only in Menards' response to CGL's Motion to Dismiss and shall not be considered in the disposition of this motion.

[2] Count XII does allege a contract between Menards and CGL and is not a subject of CGL's Motion to Dismiss.

*Sav. Bank v. Tremco Inc.*, 153 Ill. App. 3d 136, 140 (1987) (citing *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257 (1931)). In order to state a breach of contract and breach of implied warranty claim as a third-party beneficiary to the contracts with U.S. Equities, Menards must plead that the "parties to the agreement manifested an intent to confer a benefit upon" it. *Industrial Hard Chrome, Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 744 (N.D. Ill. 1999) (citing *Hunter v. Old Ben Coal Co.*, 844 F.2d 428, 431 (7th Cir. 1988)).

"[T]he promisor's intention must be evidenced by an express provision in the contract identifying the third-party beneficiary." *Wheeling*, 153 Ill. App. 3d at 140. The third-party is sufficiently identified if the contract describes a class as the third-party beneficiary, but the specific direct beneficiary must be a member of the class intended to be benefitted when performance is due. *Industrial Hard Chrome*, 64 F. Supp. 2d at 744-45. "Under Illinois law, there is always a strong presumption that contracting parties bargain and agree for themselves and only incidentally for third persons." *F.W. Hempel & Co., Inc. v. Metal World, Inc.*, 721 F.2d 610, 614 (7th Cir. 1983) (citation omitted).

Count X alleges that U.S. Equities contracted with Jacobson for the purpose of designing the retaining wall. (Compl. ¶ 95.) Count XI alleges that U.S. Equities contracted with CGL for the purpose of preparing civil engineering plans to improve the land and the placement of the retaining wall. (Compl. ¶ 106.) Counts XII and XIV allege that U.S. Equities contracted with SKS for the purpose of providing the block material that was used in the retaining wall. (Compl. ¶¶ 123, 132.) Counts X, XI, XIII, and XIV all allege that Menards was the intended third-party beneficiary of the contracts between U.S. Equities and Jacobson, CGL, and SKS, and that Jacobson, CGL, and SKS knew that the retaining wall was being built for Menards at the time of contracting. (Compl. ¶¶ 96,

107, 124, 133.)

Counts X, XI, XIII and XIV do not allege that there is an express provision of the contracts between U.S. Equities and Jacobson, CGL, and SKS that identifies Menards, or a class of which Menards is a member, as a direct third-party beneficiary. Moreover, "[i]t is not enough that the parties to the contract know, expect or even intend that others will benefit from the construction of the [retaining wall] in that they will be users of it." *Waterford Condominium Ass'n v. Dunbar Corp.*, 104 Ill. App. 3d 371, 373 (1982) (citation omitted). Thus, these allegations are insufficient to support the inference that Menards was the direct third-party beneficiary of the contracts between U.S. Equities and Jacobson, CGL, and SKS. Therefore, Counts X, XI, XIII, and XIV must be dismissed.

## SUMMARY

U.S. Equities' Motion to Dismiss is granted with respect to Count XVI and denied with respect to Counts I, II, III, IV, and V. Jacobson's, CGL's, and SKS's Motions to Dismiss are granted.

## CONCLUSION

For the reasons stated above, U.S. Equities' Motion to Dismiss Counts I, II, III, IV, V and XVI is granted in part and denied in part. Jacobson's Motion to Dismiss Counts X and XVIII is granted. CGL's Motion to Strike and Dismiss Counts XI and XIX is granted. SKS's Motion to Dismiss Counts XIII, XIV, XV and XX is granted.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: February 26, 2002