# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7142 | **DATE** | 9/12/2002 |
| **CASE TITLE** | MENARD, INC. vs. U.S. EQUITIES DEVELOPMENT, INC. | | |

**MOTION:**  [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  Status hearing held and continued to 9/26/02 at 9:00 a.m. Enter Memorandum Opinion And Order. B-Brook's motion to dismiss the amended complaint is granted in part and denied in part. U.S. Equities' motion to dismiss counts I through XIV is granted in part and denied in part. Countryside's motion to dismiss counts XV, XVI, XVII, XVIII, and XIX of plaintiff's first amended complaint at law is granted in part and denied in part. Jacobson's motion to dismiss count XX is denied. CGL's motion to strike and dismiss count XXII is denied. SKS's motion to dismiss count XXIII is denied.

(11)  ■  [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 1 3 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 80 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

Document Number

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED

SEP 1 3 2002

|  |  |
|---|---|
| MENARD, INC., d/b/a MENARDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| U.S. EQUITIES DEVELOPMENT, INC., | ) |
| as Contract Manager; B-BROOK | ) |
| EQUITIES, LLC, as Owner-Manager; | ) |
| and COUNTRYSIDE INDUSTRIES, | ) |
| INC.; DAVID L. JACOBSON | ) |
| & ASSOCIATES, LTD.; COWHEY | ) |
| GUDMUNDSON LEDGER, LTD.; and | ) |
| SERVICE KONSTRUCTION SUPPLY, | ) |
| INC. | ) |
| | ) |
| | ) |
| Defendants. | ) |

Case No. 01 C 7142

Hon. John W. Darrah

SEP 1 3 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff, Menard, Inc., doing business as Menards ("Menards"), originally filed this action in the Circuit Court of Will County against Defendants, U.S. Equities Development, Inc. ("U.S. Equities"); Countryside Industries, Inc. ("Countryside"); David L. Jacobson and Associates, Ltd. ("Jacobson"); Cowhey Gudmundson Ledger, Ltd. ("CGL"); and Service Konstruction Supply, Inc. ("SKS"). The action was subsequently removed to this Court. U.S. Equities, Jacobson, CGL and SKS subsequently moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), certain counts of the complaint against them. Jacobson's, CGL's, and SKS's motions were granted; and U.S. Equities' motion was granted in part. Menards then filed an amended complaint, which, among

*80*

other things, added a new defendant, B-Brook Equities, LLC ("B-Brook").

U.S. Equities, B-Brook, CGL, Jacobson, SKS, and Countryside have moved, pursuant to Rule 12(b)(6), to dismiss certain counts of the amended complaint against them. For the reasons that follow, CGL's Motion to Strike and Dismiss Count XXII of the Amended Complaint at Law is denied. Jacobson's Motion to Dismiss Count XX of Plaintiff's First Amended Complaint at Law is denied. Countryside's Motion to Dismiss Counts XV, XVI, XVII, XVIII, and XIX of Plaintiff's First Amended Complaint at Law is granted in part and denied in part. SKS's Motion to Dismiss Count XXIII of the Plaintiff's First Amended Complaint is denied. U.S. Equities' Motion to Dismiss Counts I through XIV is granted in part and denied in part. B-Brook's Motion to Dismiss the Amended Complaint is granted in part and denied in part.

## LEGAL STANDARD

When considering a motion to dismiss, well-pleaded allegations in the complaint are accepted as true. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997). Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts,* 135 F.3d 1202, 1205 (7th Cir. 1998). Dismissal is proper only when it appears beyond doubt that Plaintiff can prove no set of facts to support the allegations in his or her claim. *Strasburger v. Board of Education*, 143 F.3d 351, 359 (7th Cir. 1998).

"Although the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail the facts upon which he bases his claim,'. . . he must 'set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery.'" *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985) (internal citation omitted). A complaint will not avoid dismissal if it contains "bare legal conclusions" absent facts outlining the basis of the claims.

-2-

*Perkins v. Silverstein*, 939 F.2d 463, 467 (7th Cir. 1991).

## **BACKGROUND**

For purposes of these Motions to Dismiss, the following allegations are taken as true.

Menards, a Wisconsin corporation, entered into a contract with U.S. Equities, an Illinois corporation, and B-Brook, an Illinois limited liability company, for the sale of a parcel of land consisting of approximately 13.1 acres located adjacent to the intersection of Illinois Route 53 and Rockhurst Road in Bolingbrook, Illinois ("the premises").

In the Purchase and Sale Agreement between B-Brook and Menards, B-Brook expressly warranted that the property was "free of latent defects and non-apparent hazards and characteristics which would impair the use of the property for the purchaser as contemplated herein, or would cause the purchaser any liability to any person or persons, natural or corporate, or any governmental body." Paragraph 15 of the Purchase and Sale Agreement provides:

> SURVIVAL OF COVENANTS: Any representation, warranty, covenant or agreement herein of either party to this Agreement whether to be performed before or after the closing date shall not be deemed to be merged into or waived by the instruments of closing, but shall expressly survive closing for one (1) year from the date of closing and shall be binding upon the party obligated thereby.

(Am. Compl., Ex. A ¶ 15.) Paragraph 5(I) provides in pertinent part:

> The representations and warranties contained in this section shall be true and correct on the date of closing and shall survive the closing and continue in full force for a period of one (1) year and effect notwithstanding the closing and consummation of the transaction contemplated herein, and the obligation of the Purchaser to close this transaction is expressly conditioned upon said representations. Any claim for breach of Seller's representations or warranties shall be made within one year after the date of closing or shall be barred.

(Am. Compl., Ex. A. ¶ 5(I).)

Pursuant to the terms of the contract, B-Brook agreed to provide a retaining wall on the east

side of the premises. U.S. Equities, acting as B-Brook's construction manager, entered into several

contracts relating to the premises. U.S. Equities entered into a contract with CGL, an Illinois civil

engineering firm, in which CGL agreed to engineer the site plan upon which a typical Menards retail

home improvement center was to be constructed. U.S. Equities contracted with Countryside to serve

as the general contractor on the development of the premises, including oversight of the retaining

wall, which was intended to support a typical Menards retail home improvement center.

Countryside entered into a contract with SKS in which SKS agreed to provide the materials

with which the retaining wall was to be constructed on the premises. SKS entered into a contract

with Jacobson in which Jacobson agreed to design the retaining wall.

On or about July 1, 1997, Menards also entered into a contract directly with CGL in which

CGL agreed to provide certain professional architectural and engineering services in connection with

the construction of a typical Menards retail home improvement center.

After completion and before the use of the Menards store, the retaining wall began to crumble

and was unusable for its intended purpose. The existing concrete slab, surrounding landscaping, and

utilities were damaged.

The Village of Bolingbrook declared the retaining wall a public health violation. Some of

the defects in the retaining wall include the following: (1) improper soil installed as backfill, (2)

improper level of backfill, (3) improper maximum uniform surcharge of 250 pounds per square foot,

(4) improperly constructed wall angle, (5) improperly installed geogrids, (6) improperly compacted

backfill, and (7) defective block material.

B-Brook and U.S Equities failed to provide the retaining wall: (1) according to Jacobson's

and CGL's plans, specifications and drawings; (2) in a good, substantial, and workmanlike manner;

(3) to the satisfaction of Jacobson and CGL; and (4) with the capacity to support a typical Menards retail home improvement center. U.S. Equities and B-Brook acted in a manner which concealed the defects in the retaining wall and prevented their discovery by Menards.

Countryside failed to build the retaining wall: (1) according Jacobson's and CGL's plans, specifications and drawings; (2) in a good, substantial and workmanlike manner; (3) to the satisfaction of Jacobson and CGL; and (4) with the capacity to support a typical Menards retail home improvement center. Countryside also intentionally failed to advise Menards of the defects in the wall.

Jacobson failed to: (1) prepare the proper plans, specifications and drawings necessary to construct the retaining wall; (2) ensure that the retaining wall was built to its satisfaction; and (3) design a retaining wall capable of supporting a typical Menards retail home improvement center.

CGL failed to: (1) prepare the proper plans, specifications and drawings necessary to improve the premises and place the retaining wall and improve the premises for the development of a typical Menards retail home improvement center; (2) advise Menards of any compatibility issues between the design of its store and the retaining wall; (3) ensure that the retaining wall was built to its satisfaction; and (4) provide professional engineering services for the development of a typical Menards retail home improvement center on the premises.

SKS supplied bricks or block material that were of poor quality and insufficient for use in the retaining wall.

Due to the defects in the retaining wall, Menards had to reconstruct the retaining wall at a cost of $2,500,000 and sustained loss of profits, delays in opening the store, additional security costs, and loss of goodwill and reputation.

## DISCUSSION

### *Counts I, II, and III*

U.S. Equities argues that Counts I, II, and III should be dismissed because (1) as the agent of B-Brook, a disclosed principal, it is not liable on the contract entered into on behalf of B-Brook with Menards; and (2) Paragraphs 5(I) and 15 of the Purchase and Sale Agreement bar those claims.

Count I of the amended complaint alleges B-Brook, and U.S. Equities as B-Brook's agent, breached the Purchase and Sale Agreement. Count II of the amended complaint alleges B-Brook, and U.S. Equities as B-Brook's agent, breached the Purchase and Sale Agreement's express warranty against latent defects, hazards and characteristics which impaired Menards' use of the premises for its intended purpose. Count III of the amended complaint alleges that B-Brook, and U.S. Equities as B-Brook's agent, breached an implied warranty that the retaining wall would be constructed in a good, substantial and workmanlike manner.

Counts I, II and III cannot be maintained against U.S. Equities as B-Brook's agent. "It has long been settled in Illinois that, when an agent entering into a contract with another discloses both his agency status and the name of his principal or when the party dealing with the agent knows that the agent is acting for his principal in making a contract, the agent is not liable on the contract unless he agrees to become personally liable." *Storm & Assocs., Ltd. v. Cuculich*, 298 Ill. App. 3d 1040, 1053 (1998). However, "an agent who contracts with a third party on behalf of an undisclosed or partially disclosed principal is personally liable on the contract." *Kimco Corp. v. Murdoch, Coll & Lillibridge, Inc.*, 313 Ill. App. 3d 768, 771-72 (2000). "A principal is undisclosed when the third party does not know that the agent is contracting on another's behalf. A principal is partially disclosed when the third party knows that the agent is contracting on behalf of a principal but does

not know the identity of the principal." *Kimco*, 313 Ill. App. 3d at 771. Here, the complaint alleges that U.S. Equities was acting as B-Brook's agent in entering into the contract for the sale of the premises. The Purchase and Sale Agreement itself denotes B-Brook as the seller of the premises. Thus, there is no doubt that B-Brook was disclosed as U.S. Equities' principal. Therefore, U.S. Equities cannot be liable on the Purchase and Sale Agreement; and Counts I, II, and III against it are dismissed. *See Storm & Assocs.*, 298 Ill. App. 3d at 1053.

B-Brook moves to dismiss Counts I, II and III, arguing that those counts are barred by Paragraphs 5(1) and 15 of the Purchase and Sale Agreement.

Pursuant to Federal Rule of Civil Procedure 10(c), which provides that "[a] copy of any written instrument which is attached as an exhibit to a pleading is a part thereof for all purposes," the exhibits are part of Plaintiff's complaint. "When . . . an exhibit contradicts an assertion in the complaint and reveals information which prohibits recovery as a matter of law, the information provided in the exhibit trumps the assertion in the complaint." *Banco del Estado v. Navistar Int'l Transp. Corp.*, 947 F. Supp. 1176, 1179 (N.D. Ill. 1996).

B-Brook states that the sale of the premises closed on February 1, 2000. Menards does not dispute that February 1, 2000 was the date of the closing. Furthermore, the date of closing is supported by the Recorded Limited Warranty Deed dated February 1, 2000. The complaint alleges that the retaining wall began to crumble after closing. Under the terms of the contract, Menards was required to bring suit under any action arising from the breach of any representation, warranty, covenant or agreement contained in the Purchase and Sale Agreement within one year of closing or February 1, 2001.

The original complaint was filed on August 10, 2001. The amended complaint, which named

B-Brook as individual defendant, was filed on March 19, 2002. These dates are well after the February 1, 2001 deadline set by Paragraphs 5(I) and 15 of the Purchase and Sale Agreement.

Menards argues that Counts I, II and III are not time-barred because the terms of Paragraphs 5(I) and 15 are ambiguous and, as such, should be construed against the drafter, B-Brook. Specifically, Menards argues that the term "claim" is ambiguous because it is undefined in the Purchase and Sale Agreement and that the Purchase and Sale Agreement does not indicate how Menards would recover for latent defects after the one-year limitation had run. Furthermore, Menards argues, the fact that Paragraph 15 does not contain a requirement that Menards bring a claim within one year shows that the limitation in Paragraph 5(I) is ambiguous.

Paragraphs 5(I) and 15 are unambiguous. Paragraph 5(I) clearly states that "[a]ny claim for breach of [B-Brook's] representations or warranties shall be made within one (1) year after the date of closing or shall be barred." Paragraph 15 supports Paragraph 5(I), expressly providing that representations, warranties, covenants or agreements contained in the Purchase and Sale Agreement survive closing for one year after closing. Both paragraphs limit B-Brooks' liability on the warranties, covenants, agreements or representations to one year after closing. Therefore, Counts I, II, and III are barred by Paragraphs 5(I) and 15.

### Counts VIII, IX, X

Counts VIII, IX, X allege claims for breach of contract, breach of express warranty, and breach of implied warranty, respectively, against U.S. Equities as contract manager and against B-Brook by "virtue of affiliation". These counts are also dismissed pursuant to Paragraphs 5(I) and 15 of the Purchase and Sale Agreement, as discussed above.

### Counts VII and XIV

U.S. Equities also moves to dismiss Counts VII and XIV. As was noted above, agents are not liable on contracts they enter into on behalf of a disclosed principal. *Storm & Assocs.*, 298 Ill. App. 3d at 1053. The Court was unable to find any law in support of a theory that an agent is liable to a third-party in an unjust enrichment action for the actions of its principal. "[B]ecause the court determined that [U.S. Equities is] not liable for the performance of the contract in its capacity as an agent, Count [XIV], unjust enrichment, is meritless." *Am. Design Group, Inc. v. Soft Sheen Prods., Inc.*, No. 95 C 3196, 1996 WL 41698, at *1 (N.D. Ill. Feb. 1, 1996).

### Counts IV and XI

Count IV is a claim for a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/2 (2002). B-Brook moves to dismiss Count IV, arguing that (1) it fails to satisfy the pleading requirements for stating a claim for consumer fraud, (2) Menards is not a "consumer", and (3) Menards has failed to allege a "nexus" with Illinois consumers. To state a claim for consumer fraud, Menards must allege: (1) a deceptive act or practice by B-Brook, (2) B-Brook's intent that Menards rely on the deception, (3) that the deception occurred in the course of trade or commerce, and (4) that the consumer fraud is the proximate cause of its injury. *DeLeon v. Beneficial Constr. Co.*, 55 F. Supp. 2d 819, 825 (N.D. Ill. 1999).

Because this case is in federal court, Count IV must meet the pleading requirements of Rule 9(b). Rule 9(b) provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity. Fed.R.Civ.P. 9(b). This means that persons alleging fraud must state "'the who, what, when, where, and how.'" *Boyd Mach. & Repair Co. v. American Int'l Homes, Ltd.*, 100 F. Supp. 2d 898, 900 (N.D. Ill. 2000) (quoting *DiLeo v. Ernst &*

*Young*, 901 F.2d 624, 628 (7th Cir. 1990)). "The allegations must be specific enough to provide the defendants with a general outline of how the alleged fraud scheme operated and of their purported role in the scheme." *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 347 (N.D. Ill. 1997) (citations omitted). In this case, Menards must identify "'the persons making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated.'" *DeLeon*, 55 F. Supp. 2d at 825 (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)).

To determine whether Count IV is sufficient, a court will bear in mind the purposes of Rule 9(b): "(1) protecting the defendants' reputations; (2) preventing fishing expeditions; and (3) providing adequate notice to the defendants." *Rohlfing*, 172 F.R.D. at 347 (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)).

Count IV alleges that: (1) prior to closing, B-Brook intentionally concealed from Menards the defects in the retaining wall in order to induce Menards to close on the purchase of the premises and proceed with the construction of a Menards retail home improvement center; (2) B-Brook was acting in its trade as general contractor and real estate broker when it made the misrepresentation; and (3) as a result of B-Brook's misrepresentation, the retaining wall crumbled, causing damage to the concrete slab, surrounding landscaping, and utilities.

These allegations comply with the pleading requirements of Rule 9(b). The allegations in Count IV are specific enough to provide B-Brook with a general outline of how the alleged scheme operated and B-Brook's alleged part in the scheme. *See Rohlfing*, 172 F.R.D. at 347.

B-Brook's argument that Count IV should be dismissed because Menards is not a "consumer" under the ICFA and Menards has not alleged a nexus with Illinois consumers is also

unpersuasive. A "consumer" is "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 Ill. Comp. Stat. 505/1(e) (2002). Foreign and domestic corporations are "persons" under the ICFA. § 505/1(c). "The term 'merchandise' includes any objects, wares, goods, commodities, intangibles, real estate situated outside the State of Illinois, or services." § 505/1(b). Menards alleges that B-Brook agreed to provide it with services in addition to the sale of the premises. Thus, Menards is a "consumer" under the ICFA. As a "consumer" Menards need not allege a nexus with Illinois consumers. *See Agfa Corp. v. Wagner Printing Co.*, No. 02 C 2400, 2002 WL 1559663, at *2 (N.D. Ill. July 10, 2002) (noting that if the plaintiff is a consumer under the ICFA it need only show a personal injury caused by the deceptive act). Menards has alleged damages as a result of B-Brook's alleged deception. Therefore, B-Brook's motion to dismiss is denied with respect to Count IV.

Count IV is also pled against U.S. Equities "by virtue of its affiliation as agent of B-Brook ". The Court was unable to find any law in support of a theory that an agent is liable for the misconduct or deceptive practices of its principal. Therefore, because it appears beyond doubt that Menards can prove no set of facts to support the allegations in this claim, U.S. Equities' motion to dismiss U.S. Equities from Count IV is granted. *See Strasburger*, 143 F.3d at 359.

Count XI alleges that U.S. Equities, acting as contract manager, violated the Illinois Consumer Fraud and Deceptive Practices Act by intentionally concealing defects in the retaining wall from Menards in order to induce Menards to close on the purchase of the premises. Count XI also alleges that the wall crumbled, causing damage to other property. U.S. Equities' motion

to dismiss Count XI is denied for the reasons set forth above.

Count XI is also pled against B-Brook by virtue of its affiliation with U.S Equities. As was noted above, the amended complaint alleges that U.S. Equities was B-Brook's agent. Under the doctrine of *respondeat superior*, a principal will be held liable for the misconduct of its agent. *See Moy v. County of Cook*, 159 Ill. 2d 519, 523 (1994). Therefore, B-Brook's motion to dismiss is denied with respect to Count XI.

### *Economic Loss Doctrine*

U.S. Equities, Countryside, Jacobson, CGL and SKS all move to dismiss the tort claims against them (Counts V, VI, XII, XIII, XVII, XVIII, XIX, XX, XXIII), arguing that such claims are barred by the economic loss doctrine, which provides that claims cannot be maintained for damages to the product itself or the costs of repairs without a claim of personal injury or property damage.

The economic loss doctrine "bars a plaintiff from recovering in negligence for losses which are purely economic, that is, do not involve personal injury or property damage." *Tolan & Son, Inc. v. KLLM Architects, Inc.*, 308 Ill. App. 3d 18, 24 (1999) (quoting *Nepomoceno v. Knights of Columbus*, No. 96 C 4789, 1999 WL 66570 at *11 (N.D. Ill. Feb. 8, 1999)). "'Economic loss' has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits – without any claim of personal injury or damage to other property' . . . as well as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 82 (1982) (internal citation omitted).

There are three exceptions to the economic loss doctrine: "(1) where the plaintiff sustained damage, *i.e., personal injury or property damage*, resulting from a sudden or dangerous occurrence . . . ; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud . . . ; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *In re Chicago Flood Litig.*, 176 Ill. 2d 179, 199 (1997) (internal citations omitted).

To state a claim for negligent misrepresentation, a plaintiff must plead:

> (1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by the defendant, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, (5) damage to the other party resulting from such reliance, and (6) a duty owed by defendant to plaintiff to communicate accurate information.

*Quinn v. McGraw-Hill Co., Inc.*, 168 F.3d 331, 335 (7th Cir. 1999) (citing *Rosenstein v. Standard & Poor's Corp.*, 264 Ill. App. 3d 818, 821 (1993)).

"[P]urely economic injury attributable to a negligent misrepresentation is not actionable in Illinois unless the defendant is in the 'business of supplying information for the guidance of others in their business transactions'." *Decatur Mem'l Hosp. v. Connecticut Gen. Life Ins. Co.*, 990 F.2d 925, 928 (7th Cir. 1993) (quoting *Moorman*, 91 Ill. 2d at 89). To state a claim based on the negligent misrepresentation exception to *Moorman*, Menards must allege that (1) U.S. Equities, B-Brook, and Countryside are in the business of supplying information for the guidance of others in their business dealings; (2) U.S. Equities, B-Brook, and Countryside provided information that constitutes a misrepresentation; and (3) U.S. Equities, B-Brook, and Countryside supplied the information for guidance in Menards' business dealings. *Tolan & Son,*

*Inc. v. KLLM Architects, Inc.*, 308 Ill. App. 3d 18, 27 (1999).

The determination of whether a defendant is in the business of supplying information for the guidance of others in their business transactions is a "precise, case-specific inquiry." *Rankow v. First Chicago Corp.*, 870 F.2d 356, 361 (7th Cir. 1989). "If the intended end result of the plaintiff-defendant relationship is for the defendant to create a product, a tangible thing, then the defendant will not fit into the 'business of supplying information' negligent misrepresentation exception." *Tolan & Son*, 308 Ill. App. 3d at 28 (quoting *MW Mfrs., Inc. v. Friedman Corp.*, No. 97 C 8319, 1998 WL 417501, at * 4 (N.D. Ill. July 21, 1998)). A defendant is not in the business of supplying information if the information supplied "is merely ancillary to the sale of a product or service or in connection with the sale." *Tolan & Son*, 308 Ill. App. 3d at 28.

### Counts V and XII

Count V alleges that B-Brook negligently misrepresented that the retaining wall had been properly designed and constructed. Count XII alleges that U.S. Equities negligently misrepresented that the retaining wall had been properly designed and constructed. Counts V and XII allege that: (1) B-Brook and U.S. Equities failed to inform Menards of the defects in the retaining wall; (2) B-Brook, as general contractor and real estate broker, and U.S. Equities, as construction manager and real estate broker, were in the business of supplying information; (3) B-Brook and U.S. Equities had a duty to use reasonable care in supplying such information; (4) the retaining wall crumbled, causing "sudden or precipitous" damage to the existing concrete slab, surrounding landscaping, and utilities; and (5) Menards incurred damages as a result of the misrepresentation.

Real estate brokers are in the business of supplying information. *See Rankow*, 870 F.2d at

364. In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). The allegation that U.S. Equities and B-Brook were acting as real estate brokers reasonably supports the inference that they were in the business of supplying information.

Moreover, the allegations that U.S. Equities and B-Brook failed to inform Menards of defects in the retaining wall, had a duty to use reasonable care in supplying such information, and that such information was incorrect reasonably support the inference that the information U.S. Equities and B-Brook supplied constituted a misrepresentation and that it was provided for Menards' guidance. Therefore, Counts V and XII sufficiently state a claim for negligent misrepresentation; and dismissal of Counts V and XII is denied. *Tolan & Son*, 308 Ill. App. 3d at 27.

*Count XVIII*

Count XVIII alleges that Countryside negligently misrepresented that the retaining wall had been properly designed and constructed. Count XVIII alleges that: (1) Countryside failed to inform Menards of the defects in the retaining wall; (2) Countryside, as a subcontractor, was in the business of supplying information; (3) Countryside had a duty to use reasonable care in supplying such information; (4) the retaining wall crumbled, causing "sudden or precipitous" damage to the existing concrete slab, surrounding landscaping, and utilities; and (5) Menards incurred damages as a result of the misrepresentation.

These allegations reasonably support the inference that Countryside is in the business of supplying information. Count XVIII alleges that Countryside was in the business of supplying

information. As was noted earlier, this Court will draw all reasonable inferences from the facts alleged in the complaint in the light most favorable to the plaintiff. *See Marshall-Mosby*, 205 F.3d at 326. Furthermore, whether Countryside was in the business of supplying information requires further factual development and, therefore, is not appropriate for consideration on a motion to dismiss. *See Tolan & Son*, 308 Ill. App. 3d at 31. Therefore, Count XVIII adequately states a claim for negligent misrepresentation.

## Negligence

Counts VI, XIII, XIX, XX, XXII, and XXIII allege negligence claims against B-Brook, U.S. Equities, Countryside, Jacobson, CGL, and SKS, respectively. B-Brook, U.S. Equities, Countryside, Jacobson, CGL, and SKS argue that these counts are barred by the economic loss doctrine and, therefore, should be dismissed.

### *Counts VI, XIII, XIX, XX, XXII, XXIII*

Counts VI and XIII allege that B-Brook and U.S. Equities had a duty to use reasonable care and breached that duty by (1) failing to provide the retaining wall according to the plans, specifications and drawings made by Jacobson and CGL; (2) failing to provide the retaining wall in a good, substantial and workmanlike manner; (3) failing to provide the retaining wall to the satisfaction of Jacobson; and (4) failing to provide the retaining wall to the satisfaction of CGL.

Count XIX alleges that Countryside owed Menards a duty of reasonable care and breached that duty by (1) failing to provide the retaining wall according to the plans, specifications and drawings made by Jacobson and CGL; (2) failing to provide the retaining wall in a good, substantial and workmanlike manner; (3) failing to provide the retaining wall to the satisfaction of Jacobson; and (4) failing to provide the retaining wall to the satisfaction of CGL.

Count XX alleges that Jacobson was negligent by (1) failing to prepare the proper plans, specifications and drawings necessary to properly construct the retaining wall; (2) failing to ensure that the subcontractors built the retaining wall to its satisfaction; and (3) failing to design a retaining wall capable of supporting a Menards retail home improvement center. Count XXII alleges CGL, as the civil engineer, had a duty of reasonable care and breached that duty by failing (1) to prepare the proper plans, specifications, and drawings necessary to improve the parcel; (2) to advise Menards of any compatibility issues between the design of the store and the retaining wall; and (3) to ensure that the subcontractors built the retaining wall to CGL's satisfaction.

Count XXIII alleges that SKS, as the subcontractor, had a duty to provide the materials with which the retaining wall was to be built with reasonable care. Count XXIII also alleges that SKS breached that duty by providing bricks or block material that were of poor quality and insufficient for use in the retaining wall.

Counts VI, XIII, XIX, XX, XXII, and XXIII further allege that the Village of Bolingbrook declared the retaining wall to be a public health violation and that, as a public health violation, the wall creates a reasonable expectation of injury or death. Counts VI, XIII, XIX, XX, XXII, and XXIII allege that, as a result of the defendants' negligence, the retaining wall began to crumble and "sudden or precipitous" damage occurred to the existing concrete slab, surrounding landscaping, and utilities.

The sudden or dangerous occurrence exception to the economic loss doctrine applies. To fall under this exception to the economic loss rule, a plaintiff must allege that there was a sudden or dangerous occurrence that results in personal injury or damage to other property. *In re Chicago Flood Litig.*, 176 Ill. 2d at 199. "However, the economic loss rule applies even to

-17-

plaintiffs who have incurred physical damage to their property if the damage is caused by disappointed commercial expectations, gradual deterioration, internal breakage, or other nonaccidental causes, rather than a dangerous event." *In re Chicago Flood Litig.*, 176 Ill. 2d at 200-01.

Count VI, XIII, XIX, XX, XXII and XXIII allege that "sudden or precipitous property damage occurred to property other than the retaining wall, including the existing concrete slab, surrounding landscaping, and utilities." Considered in the light most favorable to the Plaintiff, these allegations reasonably support the inference that the damage to the other property was caused by a "sudden or dangerous" occurrence. Thus, Counts VI, XIII, XIX, XX, XXII and XXIII are not barred by the *Moorman* doctrine; and the Defendants' motions to dismiss are denied with respect to these counts.

### Fraud

Finally, Countryside moves to dismiss Count XVII, arguing that a claim for fraud is barred by the *Moorman* doctrine.

"In Illinois, fraud requires proof '(1) that the defendant made false statements of material fact, (2) knowing that they were false, and (3) intending that the plaintiff would rely on them; (4) that plaintiff did rely, (5) that this reliance was justified, and that (6) plaintiff suffered damages as a result.'" *TRW Title Ins. Co. v. Security Union Title Ins. Co.*, 153 F.3d 822, 828 (7th Cir. 1998) (quoting *Gen. Motors Acceptance Corp. v. Central Nat'l Bank of Matton*, 773 F.2d 771, 778 (7th Cir. 1985)). "[F]raud may be based on a failure to disclose, which together with an affirmative statement or act is misleading." *GMAC*, 773 F.2d at 778. As was noted earlier, since this action is in federal court, the fraud count must be pled with particularity under Rule 9(b), stating the who,

what, when, where and how. *See Boyd Mach. & Repair*, 100 F. Supp. 2d at 900.

Count XVII alleges that (1) at or before the time of closing, Countryside knew of the defects in the retaining wall; (2) Countryside intentionally failed to advise Menards of the defects; (3) as a result, the retaining wall began to crumble, causing "sudden or precipitous" damage to surrounding property; and (4) Menards suffered damages.

These allegations comply with the pleading requirements of Rule 9(b). The allegations in Count XVII are specific enough to provide Countryside with a general outline of how the alleged scheme operated and Countryside's alleged part in the scheme. *See Rohlfing*, 172 F.R.D. at 347.

Count XVII is not barred by the *Moorman* doctrine. As was discussed above, the allegation that the damage was "sudden or precipitous" reasonably supports the inference that the damage to the concrete slab, landscaping and utilities was allegedly caused by a "sudden or dangerous" occurrence. Further factual development may reveal that the damage to the other property was not caused by such an occurrence. However, at this time, the Court is only considering the sufficiency of the pleadings. Therefore, Countryside's Motion to Dismiss is denied with respect to Count XVII.

### Counts XV and XVI

Countryside also moves to dismiss Counts XV and XVI, arguing that Menards was not a third-party beneficiary of its contract with B-Brook. Menards does not allege that it entered into any contracts with Countryside.

"[O]nly when parties intentionally enter into a contract for the direct benefit of a third person may that person, who is not a party to the contract, enforce any rights therein." *Wheeling Trust & Sav. Bank v. Tremco Inc.*, 153 Ill. App. 3d 136, 140 (1987) (citing *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257 (1931)). In order to state a breach of contract and breach of implied

warranty claim as a third-party beneficiary to the contract between B-Brook and Countryside, Menards must plead that the "parties to the agreement manifested an intent to confer a benefit upon" it. *Industrial Hard Chrome, Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 744 (N.D. Ill. 1999) (citing *Hunter v. Old Ben Coal Co.*, 844 F.2d 428, 431 (7th Cir. 1988)).

"[T]he promisor's intention must be evidenced by an express provision in the contract identifying the third-party beneficiary." *Wheeling*, 153 Ill. App. 3d at 140. The third-party is sufficiently identified if the contract describes a class as the third-party beneficiary, but the specific direct beneficiary must be a member of the class intended to be benefitted when performance is due. *Industrial Hard Chrome*, 64 F. Supp. 2d at 744-45. "Under Illinois law, there is always a strong presumption that contracting parties bargain and agree for themselves and only incidentally for third persons." *F.W. Hempel & Co., Inc. v. Metal World, Inc.*, 721 F.2d 610, 614 (7th Cir. 1983) (citation omitted).

Count XV alleges that U.S. Equities, as construction manager for B-Brook, contracted with Countryside for the purpose of overseeing the construction of the retaining wall. Count XV alleges that Countryside breached that contract. Count XVI alleges that Countryside impliedly warranted that the retaining wall would be built in a good, substantial, and workmanlike manner and breached its implied warranty when the retaining wall began to crumble and cause damage to surrounding property. Counts XV and XVI allege that Menards was an intended third-party beneficiary of the contract because Countryside knew that the retaining wall was being built for Menards at the time it entered into the contract with U.S. Equities.

Counts XV and XVI do not allege that there is an express provision of the contract between U.S. Equities and Countryside that identifies Menards, or a class of which Menards is a member, as

an intended third-party beneficiary. The contract, which is attached as Exhibit C to the amended complaint, does not contain such a provision. Moreover, "[i]t is not enough that the parties to the contract know, expect or even intend that others will benefit from the construction of the [retaining wall] in that they will be users of it." *Waterford Condominium Ass'n v. Dunbar Corp.*, 104 Ill. App. 3d 371, 373 (1982) (citation omitted). Thus, these allegations are insufficient to support the inference that Menards was an intended third-party beneficiary of the contracts between U.S. Equities and Countryside. Therefore, Counts XV and XVI must be dismissed.

## SUMMARY

B-Brook's Motion to Dismiss is denied with respect to Counts IV, V, VI, XI and XII and granted in all other respects. U.S. Equities' Motion to Dismiss is denied with respect to Counts V, XI and XII and granted in all other respects. Countryside's Motion to Dismiss is granted with respect to Counts XV and XVI and denied in all other respects. Jacobson's, CGL's, and SKS's Motions to Dismiss are denied.

## CONCLUSION

For the reasons stated above, B-Brook's Motion to Dismiss the Amended Complaint is granted in part and denied in part. U.S. Equities' Motion to Dismiss Counts I through XIV is granted in part and denied in part. Countryside's Motion to Dismiss Counts XV, XVI, XVII, XVIII, and XIX of Plaintiff's First Amended Complaint at Law is granted in part and denied in part. Jacobson's Motion to Dismiss Count XX is denied. CGL's Motion to Strike and Dismiss Count XXII is denied. SKS's Motion to Dismiss Count XXIII is denied.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: _September 12, 2002_