# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7142 | **DATE** | 6/10/2004 |
| **CASE TITLE** | Menard's vs. U.S. Equties, et. al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons stated in the attached memorandum opinion and order, defendants' motion for summary judgment is denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 14 2004 date docketed | 317 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | 2004 JUN 10 PM 3:24 | date mailed notice | |
| MF | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MENARD, INC. d/b/a MENARDS )
)
      Plaintiff, )
)
v. ) No: 01 C 7142
)
COUNTRYSIDE INDUSTRIES, INC.; ) Judge John W. Darrah
DAVID L. JACOBSON & ASSOCIATES, LTD.; )
COWHEY GUDMONDSON LEDER, LTD.; )
and SERVICE KONSTRUCTION SUPPLY, )
INC., )
      Defendants. )

**DOCKETED**
**JUN 1 4 2004**

## MEMORANDUM OPINION AND ORDER

Plaintiff, Menard, Inc., filed suit against Countryside Industries, Inc. ("Countryside"); David L. Jacobson & Associates, Ltd. ("Jacobson"); Cowhey Gudmondson Leder, Ltd. ("Cowhey "); and Service Konstruction Supply, Inc. ("Service Konstruction"), for problems that arose with a development of real estate. Plaintiff alleges, in Counts VII, IX, and XI of its Third-Amended Complaint, respectively, that Cowhey, Service Konstruction, and Jacobson negligently engineered, designed, or constructed a retaining wall that eventually was replaced. Plaintiff, in Count XIII, also alleges that Jacobson, Cowhey, and Service Konstruction had exclusive control of the retaining wall and should be liable under the theory of *res ipsa loquitur* for their alleged negligent conduct.

Cowhey, Service Konstruction, and Jacobson move for summary judgment as to Counts VII, IX, and XI, claiming that the "economic loss doctrine" of *Moorman Manufacturing Co. v.*

317

*National Tank Co.*, 435 N.E.2d 443 (1982), prohibits Plaintiff from recovering loss from negligence; and they had insufficient control of the wall to be liable on Count XIII.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475

2

U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts, for the purposes of this motion, taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def's 56.1") and exhibits, are as follows.

Plaintiff entered into a contract to purchase real property, whereby Plaintiff would build a typical "Menards" retail home-improvement center. Def.'s 56.1 ¶ 1; Third Am. Compl. ¶ 3. Cowhey was hired to perform engineering services such as site design, mass grading, earthwork estimates, storm sewer structures, parking lot design, and grading design on the property in question. Def.'s 56.1 ¶ 23. Cowhey's grading plans provided for a retaining wall on the east side of the site and a flat area for a building and associated parking. Def.'s 56.1 ¶ 26. A retaining wall was required because there was a considerable slope in the grade from west to east on the site. Def.'s 56.1 ¶ 27.

Plaintiff's intended purpose for the retaining wall was to hold the soil, gravel, and other materials existing on the incline of the site secure enough to support the construction and weight of a Menards home-improvement center, all the improvements, site work, landscaping, and parking lot. Def.'s 56.1 ¶ 87; Def.'s Ex. 9, ¶ 8. Plaintiff required the retaining wall to be built prior to taking possession of the site so that it could have enough flat land to build its store. Def.'s 56.1 ¶ 86. Plaintiff's development of the site included concrete slabs located adjacent to the retaining wall. Def.'s 56.1 ¶ 85. Other contractors were hired by Plaintiff to construct the

Menards building and the parking lot and to perform the concrete work at the site. Def.'s 56.1 ¶¶ 16-17.

Cowhey contacted Service Konstruction regarding the retaining wall and provided them with the grading plans and soil information. Def.'s 56.1 ¶¶ 30,31. Service Konstruction then asked Jacobson to prepare the final engineering design for the retaining wall. Def.'s 56.1 ¶ 47. Service Konstruction provided Jacobson with the preliminary sections that Service Konstruction prepared, along with Cowhey's revised grading plans. Def.'s 56.1 ¶¶ 48, 56. The revised grading plans depict a parking set back adjacent to the retaining wall but do not reference a Menards store. Def.'s 56.1 ¶ 58.

Based upon this and other information received from Service Konstruction, Jacobson completed the structural engineering design for the retaining wall and supplied Service Konstruction with structural plans and calculations of the retaining wall. Pl.'s Resp. to Def.'s 56.1 ¶ 66. Jacobson was not involved in the wall's assembly. Pl.'s Resp. to Def.'s 56.1 ¶ 82.

After Plaintiff acquired possession of the property, it allowed access to companies who were to design and construct the improvements. Pl.'s Resp. to Def.'s 56.1 ¶ 91. At that time, the retaining wall was constructed and the site was graded for Plaintiff to continue its planned development of the remaining improvements to the site, including the pavement adjacent to the retaining wall. Def.'s 56.1 ¶ 92. Plaintiff then began construction of its store on the site. Def.'s 56.1 ¶ 94. Subsequently, concrete slabs were poured along the retaining wall according to the new concrete configuration. Def.'s 56.1 ¶ 95.

A year after Plaintiff took possession of the property, it discovered that the concrete slabs located adjacent to the retaining wall were cracking, separating, and settling. Def.'s 56.1 ¶ 98.

As more cracks developed in the concrete slab, Cowhey surveyed the wall on multiple occasions and determined that the wall was settling near the dogleg in the wall and exhibited some movement in certain areas. Def.'s 56.1 ¶¶ 101, 102. Plaintiff's personnel also observed the retaining wall and noted that the wall had moved. Def.'s 56.1 ¶ 103. No loads above the retaining wall's maximum capacity were imposed on the wall. Def.'s 56.1 ¶¶ 55, 99.

After learning that the retaining wall was showing signs of movement, Jacobson evaluated the retaining wall. Def.'s 56.1 ¶ 104. Although Jacobson observed some movement in the retaining wall, the wall did not collapse. Def.'s 56.1 ¶ 112. Based on Jacobson's evaluation of the wall, Jacobson concluded that the retaining wall was not built to specifications. Def.'s 56.1 ¶ 107. The defect may have also been the result of a failure to coordinate the design, surveying, staking, and construction of the wall. Pl.'s Resp. to Def.'s 56.1 ¶ 108.

The existing retaining wall was disassembled block by block, and a new wall was built in its place. Def.'s 56.1 ¶ 114. At no time during the removal of the retaining wall did the wall collapse. Def.'s 56.1 ¶¶ 120-122.

Plaintiff seeks $2.5 million from each Defendant as damages for removing the defective retaining wall, remedy the property damage caused by the wall's failure, and build a new retaining wall suitable for its intended purpose. Moreover, Plaintiff seeks an additional $1 million from each Defendant for incidental and consequential damages, including, but not limited to, lost profits, delays in opening the store, additional security costs, loss of goodwill, and loss of reputation.

## ANALYSIS

In Illinois, the economic loss doctrine prevents a tort recovery when liability for a product defect is based upon contractual expectations. *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 926 (7th Cir. 2003) (*Am. United*). Economic losses include damages for costs to repair or replace a defective product and consequential damages such as lost profits. *In re Chicago Flood Litig.*, 680 N.E.2d 265, 274 (Ill. 1997). The economic loss doctrine covers negligence claims against design professionals, such as architects and engineers. *Fireman's Fund. Ins. Co. v. SEC Donohue, Inc.*, 679 N.E.2d 1197, 1200 (Ill. 1997); *2314 Lincoln Park West Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346, 353 (Ill. 1990).

Plaintiff does not dispute that it seeks economic damages which arise out of its diminished commercial expectations concerning the retaining wall and would otherwise be barred by *Moorman*. Plaintiff, though, contends that "the sudden, dangerous, or calamitous" exception to the economic loss doctrine is applicable, thus enabling Plaintiff to assert its claims for these damages. For a claim to fall within the sudden, dangerous, or calamitous exception, there must be (1) a sudden, dangerous, or calamitous event that (2) causes personal injury or damage to property other than the defective product itself. *Am. United*, 319 F.3d at 927; *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45, 54-55 (Ill. 1997) (*Trans States*).

Plaintiff argues that the shifting of the retaining wall at an accelerating rate satisfies the sudden, dangerous, or calamitous exception. Plaintiff asserts that because of this shifting, the concrete slabs and pavement constructed adjacent to the retaining wall buckled, cracked, shifted, and separated from the asphalt paving suddenly and without warning.

"In deciding whether the occurrence was sudden, dangerous, or calamitous, the court must determine the nature of the defect and the manner of the occurrence." *Am. United*, 319 F.3d at 927. The length of time of the defect or cause of the occurrence itself does not need to be sudden; but, rather, the point where the occurrence causes injury to other property itself must be sudden. *United Air Lines, Inc. v. CEI Indus. of Illinois, Inc.*, 499 N.E.2d 558, 562 (Ill. App. Ct. 1986).

Here, the claimed nature of the defect was a construction error in building the retaining wall. Even if this defect did not suddenly occur, a genuine issue of material fact exists as to whether the manner of the occurrence – the buckling, cracking, and shifting of the concrete slabs and pavement from the asphalt pavement – happened suddenly. Defendants argue that there is no evidence that the concrete slabs suddenly cracked. However, Defendants have failed to present any affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that the concrete slabs did not suddenly crack. Therefore, Defendants have failed to demonstrate that no genuine issue of material fact exists as to this issue.

Defendants also contend that Plaintiff's claim is for a qualitative defect in a structure, which is not recoverable under a tort theory. According to Defendants, unless the retaining wall fell down, caved in, or collapsed, any other claims Plaintiff asserts only seek recovery for a structure not fit for its intended use. Defendants rely on *Redarowicz v. Ohlendorf*, 441 N.E.2d 324, 326-27 (Ill. 1982) (*Redarowicz*), to support this proposition.

In *Redarowicz*, the plaintiff sought damages to repair and replace a chimney, wall, and patio that were all rendered defective because the house was not set deep enough in the soil. *Redarowicz*, 441 N.E.2d at 325, 327. The Illinois Supreme Court denied these claims because

7

"the only danger to the plaintiff is that he would be forced to incur additional expenses for . . . conditions that were less than what was bargained for." *Redarowicz*, 441 N.E.2d at 327. However, the court also distinguished other situations where defective construction could be recoverable in tort, noting: "The adjoining wall has not collapsed on and destroyed the plaintiff's living room furniture." *Redarowicz*, 441 N.E.2d at 327.

Here, the shifting of the retaining wall that Plaintiff contends caused the cracking of the concrete slabs is similar to the situation the Illinois Supreme Court distinguished in *Redarowicz*. Plaintiff is not just seeking a tort recovery for a qualitative defect in the retaining wall. Instead, Plaintiff is also seeking recovery for a defect which caused an injury to Plaintiff's other property.

Defendants further contend that because the concrete slabs do not constitute "other property," the exception is inapplicable. In determining whether an item is other property, Illinois applies the "product bargained for" approach. *Trans States*, 682 N.E.2d at 58. This requires a determination of the object of the bargain that governs the rights of the parties. *Trans States*, 682 N.E.2d at 58.

Defendants assert that Plaintiff admitted it bargained for a retaining wall capable of supporting all of the site improvements located next to the retaining wall, including the concrete slabs, pavement, and soils. Thus, according to Defendants, these improvements are not "other property," for the purposes of the economic loss doctrine. However, Plaintiff never admitted that it bargained for these improvements; Plaintiff only admitted that the site, as intended, would contain these improvements. Moreover, other parties were responsible for building the store, the parking lot, and the concrete slabs. Defendants have failed to present any affidavits, depositions, answers to interrogatories, and admissions on file to the contrary. Accordingly, a genuine issue

8

of material fact exists as to whether the concrete slabs, pavement, and soils constitute other property.

Defendants also seek summary judgment on Plaintiff's claim for negligence based on *res ipsa loquitur*, even if it was determined that the wall failed because of negligent construction. The doctrine of *res ipsa loquitur* is a type of circumstantial evidence, not a separate legal theory, which allows the inference of negligence when the plaintiff does not know the exact cause of the injury. *Shadley v. WWS Inns*, 02 C 50138, 2002 U.S. Dist. LEXIS 13158, at *2 (N.D. Ill. Jul. 18, 2002) (*Shadley*). The *res ipsa loquitur* doctrine involves situations when: (1) the occurrence is one that would not have happened in the absence of negligence, and (2) the thing that caused the injury was under the exclusive control of the person or persons charged with negligence. *Shadley*, 2002 U.S. Dist LEXIS 13158, at *2-3. Although an explanation is lacking for the negligence, the injury itself provides reasonable evidence that it arose from lack of due care. *Metz v. C. Illinois Elec. & Gas Co.*, 207 N.E.2d 305, 307 (Ill. 1965) (*Metz*).

The requisite degree of control needed to succeed on a theory of *res ipsa loquitur* is not a rigid standard, and "the key question is whether the probable cause is one which defendant was under a duty to the plaintiff to anticipate or guard against." *Lynch v. Precision Mach. Shop*, 443 N.E.2d 569, 573 (Ill. 1982) (*Lynch*); *see also Reed v. Ace Doran Hauling & Rigging Co.*, No. 95 C 4082, 1997 U.S. Dist. LEXIS, at * 21 (N.D. Ill. Apr. 4, 1997).

Defendant Jacobson argues there are two reasons why it lacked the control needed to satisfy the *res ipsa loquitur* doctrine. First, Jacobson argues that it was not retained to do anything but design the retaining wall, and it had no control over how the wall was constructed. Second, Jacobson argues that Plaintiff or one of its contractors was in exclusive possession of the

property for almost one year before the wall failed; thus, no Defendant could be liable under a theory of *res ipsa loquitur*.

Jacobson contends that because other parties had control of the construction of the retaining wall, it never had exclusive control of the wall prior to its failure. However, claims premised on a theory of *res ipsa loquitur* may be brought even though multiple defendants exercise concurrent control. *E.g., In re Chicago Flood Litig.*, No. 93 C 1214, 1993 WL 239041, at * 5 n.4 (N.D. Ill. June 28, 1993).

Jacobson also contends that Plaintiff had access to the property for almost a year before the wall failed, thus demonstrating that no Defendant could possess the requisite control needed for Plaintiff to prevail under a theory of *res ipsa loquitur*. However, if a defendant had control of the instrumentality at the time of the negligent act, it need not have control of the instrumentality at the time of injury. *Darrough v. Glendale Heights Cmty. Hosp.*, 600 N.E.2d 1248, 1253 (Ill. App. Ct. 1992). Thus, while it may be undisputed that Plaintiff had access to the property and allowed its contractors to enter, Defendants have failed to present any affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate that Plaintiff had exclusive control of the retaining wall at the time it was built. Accordingly, a genuine issue of material fact exists as to whether Defendants had the necessary control under a theory of *res ipsa loquitur*.

Defendant Cowhey, in its reply, asserts that Plaintiff has failed to present any evidence establishing the wall would not have failed if Cowhey had exercised ordinary care in doing what it agreed to do under the relevant contract. Cowhey further contends that Plaintiff failed to present any evidence showing that the probable cause of failure was one which Cowhey was on duty to guard against. Cowhey joined Jacobson's motion for summary judgment. These factual

10

arguments were not raised in Jacobson's Motion for Summary Judgment or supported in the parties' statement of facts. Moreover, Cowhey, the movant for summary judgment, bears the burden of demonstrating to the court why there is no genuine issue of material fact. Accordingly, Cowhey's Motion for Summary Judgment with respect to these issues is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is denied.

Dated: June 10, 2004

JOHN W. DARRAH
United States District Judge